UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALVIN JENKINS,

                Petitioner,                      Case No. 1:20-cv-13355

v.

                                             Honorable Thomas L. Ludington

JEFFREY HOWARD,[1]                         United States District Judge

                Respondent.                Honorable Elizabeth A. Stafford
                                              United States Magistrate Judge

_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF
HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY,
AND (3) DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

In 2016, a jury convicted Petitioner Alvin Jenkins of conducting a criminal enterprise, third-degree arson, conspiring to commit third-degree arson, first-degree retail fraud, and conspiring to commit first-degree retail fraud. As a result, Petitioner was sentenced to 320 months to 50 years of imprisonment. On December 10, 2020, Petitioner filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. As explained below, the Petition will be denied.

**I.**

The following facts from the Michigan Court of Appeals are presumed correct on habeas review, *see Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> [Petitioner Alvin Jenkins and co-defendant Terrance Furline]'s convictions stem from a fire and attempted theft that occurred on October 29, 2015, at the Home Depot in Kochville Township, Saginaw, Michigan. The day before on October 28, there was a completed theft and fire at the Flint Township Home Depot. Defendants devised to start a fire in the store as a distraction in order to steal and then return items without a receipt for store gift cards that were later sold to third parties for cash. An item taken from the Flint Township Home Depot was returned without a

---

[1] The proper respondent in a habeas case is the custodian of the facility where the petitioner is incarcerated. *See* Rule 2(a), Rules Governing Section 2254 Cases. Thus, this Court substitutes Jeffrey Howard, the warden of the facility where Jenkins is presently incarcerated, as the Respondent.

receipt to the Lowe's store in Burton, Michigan. Signatures were required for the returns. Multiple employees, who were working the morning shift at the Saginaw Home Depot on October 29, identified defendants in court. Defendants were also identified by loss prevention personnel from the two home improvement stores' video surveillance footage. Vehicles used in the heists were identified by the defendants' girlfriends as belonging to them. Items of clothing similar to that worn by the persons seen in video surveillance were seized from the respective girlfriends' residence where each defendant stayed. Jenkins's cellphone mapped his location as it moved to each store. Fire inspectors determined the cause of the fires at the Flint and Saginaw Home Depot stores to be arson. The fire at the Saginaw Home Depot in particular caused over a half million dollars in damage.

*People v. Jenkins*, No. 336203, 2018 WL 3244129, at *1 (Mich. Ct. App. July 3, 2018).

On September 20, 2016, a Saginaw County, Michigan, jury convicted Petitioner and Codefendant Furline of (1) conducting a criminal enterprise, MICH. COMP. LAWS § 750.159i(1); (2) third-degree arson, *id.* § 750.74; (3) conspiracy to commit third-degree arson, *id.* § 750.157a; (4) first-degree retail fraud, *id.* § 750.356c; and (5) conspiracy to commit first-degree retail fraud, *id.* §§ 750.356c(2), 750.157a. Petitioner was then sentenced to 320 months to 50 years of imprisonment. *Id.*

Petitioner filed a direct appeal asserting the following claims: (1) the trial court failed to adequately inquire into the breakdown in the attorney-client relationship and abused its discretion by not appointing new counsel; (2) he was denied his right to equal protection under the Fourteenth Amendment by the exclusion of two of three African Americans from the jury venire; (3) other acts evidence was improperly admitted and his attorney was ineffective for failing to object; (4) the court erred in failing to instruct the jury that it should view the testimony of witness Ms. Doris Furline-Walker—Codefendant Furline's mother—with caution and denied Petitioner the right to present a defense; and (5) police improperly invaded the province of the jury by identifying him as the person in the store video. *Id.* at *8–15. The Michigan Court of Appeals vacated Petitioner and Codefendant Furline's convictions, concluding that they should have been granted separate

trials and were prejudiced by their joint trial. *People v. Furline*, No. 335906, 2018 WL 3244129, at *5–6 (Mich. Ct. App. July 3, 2018).

The State applied for leave to appeal in the Michigan Supreme Court, arguing that the court of appeals erred when it vacated Petitioner and Codefendant Furline's convictions. *See* ECF No. 12-19 at PageID.840. The Michigan Supreme Court reversed the court of appeals and reinstated the convictions and sentences, concluding that the court of appeals exaggerated the extent to which the joint trial affected Petitioner and Codefendant Furline. *Id.* at PageID.830. And the Michigan Supreme Court concluded that the trial court did not abuse its discretion in trying the two jointly.[2] *See id.*

Petitioner filed a motion for rehearing raising four claims: (1) trial and appellate counsel were ineffective; (2) the trial court abused its discretion during trial; (3) the jury was not informed of an agreement between detectives and the Ms. Furline-Walker; and (4) Petitioner was denied his right to a fair trial and the right to cross-examine Codefendant Furline because of improper joinder. *See id.* at PageID.1035–41. Petitioner also filed a motion for remand. *Id.* at PageID.1047–56. The Michigan Supreme Court denied both motions. *Id.* at PageID.1062.

In 2020, Petitioner filed an emergency motion seeking to place an "incoming" petition for a writ of habeas corpus in abeyance, but he did not file a petition. ECF No. 1. So the case was dismissed without prejudice. ECF No. 3. Soon after, Petitioner filed a petition for a writ of habeas corpus, ECF No. 5, so this Court reopened the case due to Petitioner's *pro se* status, ECF No. 8. The Petition raises two claims:

   I. The state courts deprived Petitioner of his rights under the Sixth Amendment's Confrontation Clause by conducting a joint trial after the trial record showed that Codefendant Furline needed to be cross-examined regarding his involvement in Ms. Furline-Walker's testimony.

---

[2] The Michigan Supreme Court's decision will be discussed in greater detail below.

II. The State did not timely disclose an alleged nonprosecution-in-exchange-for-testimony agreement between the State and the State's key witness, Ms. Furline-Walker, depriving Petitioner of his Fourteenth Amendment right to a fair trial under *Brady v. Maryland*, 373 U.S. 83 (1963).

ECF No. 5 at PageID.18.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) constrains federal courts' review of state-court decisions in habeas cases. *See Smith v. Nagy*, 962 F.3d 192, 198 (6th Cir. 2020). Indeed, if a state court has already adjudicated a claim on the merits, a federal court may grant relief only if the state court's decision: (1) ran contrary to, or unreasonably applied, "clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) rested on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) have "independent meaning." *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000). A state-court decision is "contrary to" clearly established federal law if it (1) applies a rule that contradicts governing Supreme Court law; or (2) confronts a set of facts "materially indistinguishable" from a decision of the Supreme Court and yet arrives at a different result. *Id.* at 405–06. A state-court decision involves an "unreasonable application" of clearly established federal law if it (1) correctly identifies the governing legal rule but unreasonably applies it to the facts of the instant case, or (2) either unreasonably extends an established legal principle to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Id.* at 407.

The Supreme Court has emphasized that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410. And later Supreme Court decisions have interpreted this directive to mean that an unreasonable application "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (citation modified). AEDPA "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). But the state court's error must be "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. At bottom, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Id.* And for claims adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.

### A.

In his first claim, Petitioner argues that state courts violated his rights under the Sixth Amendment's Confrontation Clause because he could not cross-examine Codefendant Furline at their joint trial. *See* ECF No. 5 at PageID.20. Petitioner contends that his confrontation rights would have been preserved had the trial court severed the trials. *See id.* Not so.

The Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. U.S. CONST. amend. VI. That right serves a core purpose: to ensure the reliability of the evidence used to convict by requiring it to withstand the adversarial process. *Maryland v.*

- 5 -

*Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause thus bars the admission of an out-of-court testimonial statement at trial unless the witness is unavailable, and the defendant had a prior chance to cross-examine that witness. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). A statement is testimonial when it is made in circumstances that would lead a reasonable person to expect its later use at trial. *Id.* at 51–52.

Ms. Doris Furline-Walker—Codefendant Furline's mother—testified at the joint trial. Ms. Furline-Walker testified that she, Codefendant Furline, and Petitioner all participated in the theft at the Flint Home Depot on October 28, 2015. ECF No. 12-13 at PageID.536–38. According to Ms. Furline-Walker, when the fire erupted, she left the store with a stolen power tool, which Petitioner placed in his vehicle. *Id.* at 537. She later returned the power tool to another Home Depot, where she was given a gift card for the value of the tool. *Id*. at 538. Ms. Furline-Walker further testified that she and Petitioner sold the gift card at a party store and split the proceeds. *Id.* She also stated that the following day, Petitioner called her and asked if she wanted to "hit a lick" at the Saginaw Home Depot, and she declined to join Petitioner. *Id.* According to Ms. Furline-Walker, later that day, Petitioner called her and said, "he didn't mean to set that fire like that." *Id.* She testified that she did not know whether her son accompanied Petitioner to the Saginaw Home Depot. *Id.* at 544. And she testified that Detective Aaron Simons told her that if she testified against Petitioner, she would not go to jail.[3] *Id.* at 541.

Petitioner argues that Ms. Furline-Walker's testimony was part of a plan devised by her and Codefendant Furline to place the blame on Petitioner. Consequently, Petitioner argues that he should have been able to confront Codefendant Furline on the following issues: (1) whether he

---

[3] As explained below, Detective Simons testified that no promises were made to Ms. Furline-Walker, and thus no agreement existed. ECF No. 12-13 at PageID.553.

instructed Ms. Furline-Walker to implicate Petitioner; (2) Detective Simon's alleged promise not to charge Ms. Furline-Walker if she testified against Petitioner; and (3) recorded jail phone calls between Codefendant Furline, his sister, and Ms. Furline-Walker. *See* ECF No. 5 at PageID.21–30. Without being able to compel Codefendant Furline to take the stand so he could pursue such testimony, Petitioner argues, his Confrontation Rights were violated. *See id.*

But Petitioner had no right to cross-examine Codefendant Furline about those topics. The Confrontation Clause only applies to "testimonial statements" that are made with the expectation of being used in an investigation or prosecution of a crime—and offered at trial. *See Crawford*, 541 U.S. at 51–52. Petitioner identifies lines of questioning he would have pursued had Codefendant Furline testified, but he does not identify any testimonial statements by Codefendant Furline that were *introduced at trial*. *See* ECF No. 5 at PageID.21–30. Without such testimony, Petitioner cannot establish a Confrontation Clause violation. *See United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009). Moreover, Petitioner's attorney cross-examined Ms. Furline-Walker about the alleged promises made to her by Detective Simon. *See* ECF No. 12-13 at PageID.539–42. And again, Petitioner fails to assert any basis for his argument that he had a right to cross-examine Codefendant Furline about this alleged agreement. *See generally* ECF No. 5. Finally, recorded jail phone calls were not played for the jury, so there is no Confrontation issue concerning that topic either. *See generally* ECF Nos. 12-9; 12-10; 12-11; 12-12; 12-13; 12-14. Thus, Petitioner was not denied his right to confront any witnesses on their testimonial statements offered at trial.

Yet Petitioner persists. Petitioner also argues that this alleged violation of his confrontation rights establishes that the joint trial violated his right to due process. *See* ECF No. 5 at PageID.26. Because Petitioner failed to show a Confrontation Clause violation, he cannot rely on this argument

to support his claim that the trial court erred in failing to sever the trials. Even so, this shoehorn argument independently lacks merit.

Recall that although the Michigan Court of Appeals held that the trials should have been severed, the Michigan Supreme Court reversed and held that the trial court did not abuse its discretion by deciding to try Petitioner and Codefendant Furline jointly:

> The trial court's decision must be upheld absent a "significant indication on appeal that the requisite prejudice" actually occurred at trial. *Hana*, 447 Mich. at 347, 524 N.W.2d 682. We believe that no such prejudice actually occurred. Furline feared that he would have to defend against Jenkins's theory that Furline set the fire and that, in light of Jenkins's theory, he would struggle to show that Jenkins acted alone. Neither fear came to pass since Jenkins offered no evidence that Furline started the fire at the Saginaw store and Furline offered no evidence that Jenkins acted alone.
>
> The Court of Appeals exaggerated the extent to which each defendant contributed to proving the other's culpability. Furline averred in his motion that his and Jenkins's defenses would require Furline to "seek to convict the other, and defend in turn against the other's antagonistic defense, while also defending against the prosecution's case." The Court of Appeals believed that defendants were prejudiced at trial because each had "to prove the other's culpability through each witness's testimony." *Furline*, unpub. op. at 8. But, as explained below, the record doesn't support the proposition that either defendant "sought to convict the other" or that either had to "defend in turn against the other's antagonistic defense."
>
> The Court of Appeals started with whether joinder prejudiced Jenkins—even though Jenkins never moved for a separate trial and did not raise the severance issue on appeal. The Court of Appeals cited the testimony of Doris Walker-Furline, a witness called by the prosecutor. Walker-Furline, Furline's mother and an accomplice in the Flint incident, testified that Furline had known Jenkins only for a week, that Jenkins had set the Flint fire, that Furline was present for (but did not participate in) the Flint incident, and that Jenkins wished to repeat the scheme at the Saginaw store. As the Court put it, "Without Furline having to testify himself, his mother's testimony was evidence that promoted his defense that it was Jenkins [sic] idea to commit arsons and thefts at home improvement stores and he had nothing to do with Jenkins' plan." *Id.* But Walker-Furline lacked direct knowledge of the Saginaw incident, and her testimony placed Furline at the Flint store—hardly exonerating. Nothing in the Court of Appeals' characterization of Walker-Furline's testimony suggested that Furline "sought to convict" Jenkins. Nor did it cause Jenkins to have to "defend against [Furline's] antagonistic defense."

*People v. Furline*, 949 N.W.2d 666, 671 (Mich. 2020).

The Michigan Supreme Court's decision is consistent with controlling federal law. On habeas review, the Court must ask whether the failure to sever the trials impinged on Petitioner's due process rights. *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007). To prove a due process violation, a petitioner must show that the joint trial "result[ed] in prejudice so great as to deny [a petitioner his] . . . right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986).

Severance should be granted "'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Stanford v. Parker*, 266 F.3d 458–59 (6th Cir. 2001) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). A decision on a motion for severance is within the trial judge's discretion, and an "alleged abuse of [that] discretion, without more, is not a constitutional violation." *Richardson*, 481 U.S. at 209. "The mere fact that each defendant points the finger at another is insufficient [to require severance]; the defendant must show that the antagonism confused the jury." *United States v. Horton*, 847 F.2d 313, 317 (6th Cir. 1988).

Petitioner does not satisfy this burden. As discussed, the Michigan Supreme Court found that the trial court did not abuse its discretion because Codefendant Furline and Petitioner's defenses were not mutually exclusive, and the jury was not required to believe one defendant at the expense of the other. None of Petitioner's constitutional rights were implicated by a joint trial. Thus, the Michigan Supreme Court reasonably applied clearly established federal law when it held that the failure to afford Petitioner a separate jury did not render his proceeding fundamentally unfair. And even if the trials had been severed, Petitioner could not compel Codefendant Furline to testify. *See Davis v. Lafler*, 658 F.3d 525, 537 (6th Cir. 2011).

In sum, Petitioner has not shown that his confrontation rights were violated, much less that the Michigan Supreme Court's decision unreasonably applied or was contrary to clearly established federal precedent.

### B.

In his second claim, Petitioner maintains that the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose the alleged nonprosecution agreement between Ms. Furline-Walker and the State. *See* ECF No. 5 at PageID.30. Specifically, Petitioner claims Detective Simons promised that if Ms. Furline-Walker testified against him, she would not be charged for her role in the Flint Home Depot incident. *Id.* at PageID.30–35. But this *Brady* claim misses the mark.[4]

The Due Process Clause requires the state to disclose to the defense favorable evidence that is material to guilt or punishment. *Id.* at 87. "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469–70 (2009). A reasonable probability in this context means "that the likelihood of a different result is great enough to undermine[ ] confidence in the outcome of the trial." *Smith v. Cain*, 565 U.S. 73, 75–76 (2012) (punctuation modified). To demonstrate a *Brady* violation, one must show that (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) the evidence was "suppressed by the State, either willfully or inadvertently"; and

---

[4] Respondent argues that the Michigan Supreme Court denied this claim on the merits when it denied Petitioner's motions for rehearing and remand. ECF No. 11 at PageID.212–13. But neither motion raised a *Brady* claim. *See generally* ECF No. 12-19 at PageID.1035–41, 1047. Instead, regarding Ms. Furline-Walker's alleged agreement, Petitioner argued that evidence of the agreement was not presented to the jury. *Id.* So Petitioner's *Brady* claim has not been fully exhausted in state court. But exhaustion is not a jurisdictional bar to review, and where, as here, an unexhausted claim is meritless, the court may proceed to the merits. *Granberry v. Greer*, 481 U.S. 129, 131, 134–35 (1987).

(3) prejudice ensued as a result. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." *United States v. Ross*, 703 F.3d 856, 881 (6th Cir. 2012) (internal quotation omitted). If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant can demonstrate prejudice. *Id.* at 881–82.

Here, Petitioner has not demonstrated that the prosecution withheld evidence of an agreement with Ms. Furline-Walker. First, it is unclear whether an agreement actually existed. As explained above, Ms. Furline-Walker testified that Detective Simons offered her such an agreement, but Detective Simons testified that no promises were made to Ms. Furline-Walker in exchange for her testimony. ECF No. 12-13 at PageID.541, 553. Second, to the extent that Ms. Furline-Walker believed there was an agreement, the prosecution was not required to disclose her subjective beliefs, of which the prosecution was likely unaware. And to the extent an informal agreement was made, Petitioner has not explained how the delayed disclosure of Ms. Furline-Walker's understanding prejudiced the defense. All said, Petitioner's speculation is inadequate to establish prejudice in the *Brady* context. *O'Neal v. Burt*, 582 F. App'x 566, 575 (6th Cir. 2014).

In sum, both of Petitioner's claims lack merit. Petitioner has not sufficiently demonstrated that his confrontation rights were violated. Nor has he sufficiently demonstrated a *Brady* violation. So his Petition for a Writ of Habeas Corpus, ECF No. 5, will be denied.

**IV.**

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues

presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation and quoting citation omitted).

Here, reasonable jurists would not debate this Court's conclusion that Petitioner is not entitled to habeas relief. Thus, a COA will be denied. Petitioner will also be denied leave to appeal *in forma pauperis* because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

**V.**

Accordingly, it is **ORDERED** that Petitioner Alvin Jenkins's Petition for a Writ of Habeas Corpus, ECF No. 5, is **DENIED WITH PREJUDICE**.

Further, it is **ORDERED** that a certificate of appealability is **DENIED.**

Further, it is **ORDERED** that leave to appeal *in forma pauperis* is **DENIED.**

**This is a final order and closes this case.**

Dated: July 31, 2025                                                                 s/Thomas L. Ludington
                                                                                     THOMAS L. LUDINGTON
                                                                                     United States District Judge